**IN THE**
**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **V.** | ) | **Judge Memmer** |
| | ) | **No. 7:24-MJ-00046** |
| **EVAN STRAUSS** | ) | |

## <u>DEFENDANT'S MOTION FOR PRETRIAL RELEASE</u>

Mr. Evan Strauss, by his attorney, respectfully requests that this Court release him on bond pursuant to the Bail Reform Act, 18 U.S.C. § 3142 and *United States v. Salerno*, 481 U.S. 739 (1987). Mr. Strauss has rebutted the presumption of detention with evidence below that he has lived in the area for almost his entire life, he has periodic doctor appointments in the area, he lives with his mother, father, and girlfriend, all who are willing to ensure compliance with bond conditions, and when under proper care and medical supervision he poses no danger. This evidence will be further expounded upon at his detention hearing. In support of release, Mr. Strauss argues the following:

### I.  Mr. Strauss Should Be Released on Bond with Conditions.

This Court should disregard Pretrial Services' recommendation and release Mr. Strauss with conditions. In this case, the statute creates a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." § 3142(e)(3). The presumption inquiry proceeds in two steps. At Step 1, this Court must consider whether the defense has met the very low burden of production to rebut the presumption. As set forth below, Mr. Strauss has presented

evidence that rebuts the presumption. At Step 2, this Court must consider the presumption alongside all of the other § 3142(g) factors—even if the presumption has not been rebutted. Release is warranted in this case because there are numerous facts under § 3142(g) that both rebut the presumption of detention and demonstrate that there are conditions of release that will reasonably assure both Mr. Strauss's appearance in court and the safety of the community.

As the Supreme Court held in *Salerno*, "In our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception." 481 U.S. at 755. This presumption of release is encapsulated in the BRA, 18 U.S.C. § 3142. The statute states that the Court "shall order" pretrial release, § 3142(b), except in certain narrow circumstances. Even if the Court determines under § 3142(c) that an unsecured bond is not sufficient, the Court "shall order" release subject to "the least restrictive further condition[s]" that will "*reasonably assure*" the defendant's appearance in court and the safety of the community. § 3142(c)(1) (emphasis added). Under this statutory scheme, "it is only a 'limited group of offenders' who should be detained pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225, at 7 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3189); *see also United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) ("There can be no doubt that this Act clearly favors non-detention.").

## II. The Standard for Release in Presumption Cases

"[C]ase law emphasizes two checks that the BRA and the Constitution impose on the presumption: (1) [At Step 1,] there is an easy-to-meet standard for rebutting the presumption and the prosecution always bears the burden of persuasion, and (2) [at Step 2,] the presumption alone does not warrant detention and must always be weighed along with other factors [in 3142(g)]."[1]

---

[1] Alison Siegler, *Freedom Denied: How the Culture of Detention Created a Federal Jailing Crisis* 151

However, a recent national study by the University of Chicago Law School's Federal Criminal Justice Clinic (FCJC) found that judges are not adhering to these two legal requirements and are giving the presumption greater weight than the law allows. Through court watching and qualitative interviews with stakeholders, this study found that the presumption is often treated as a de facto detention order, even though the law makes the presumption easily rebuttable and requires the government to bear—at all times—the "burden of proving that detention is genuinely necessary.[2] First, at Step 1, judges are not applying the correct rebuttal standard: "in 95% of presumption cases that held a Detention Hearing in our study, judges either concluded that the arrestee had failed to rebut the presumption or did not mention whether the presumption was rebutted."[3] Second, "data also suggest that judges often disregard Step 2 of the legal test, where they are supposed to weigh the rebutted or unrebutted presumption along with all of the other pretrial release factors in reaching the ultimate release or detention determination."[4]

This is an issue not just recognized by the Defense bar, but also by the Judiciary. The judiciary has recognized concerns with unnecessary pretrial detention and is actively seeking to decrease pretrial detention rates, as seen in the public-facing website stating that, "efforts are

---

(2022), https://freedomdenied.law.uchicago.edu/; *see also Bail*, 51 GEO. L.J. ANN. REV. CRIM. PROC. 396, 407–08 (2022), https://www.westlaw.com/Document/I43b1e73f204811ed9f24ec7b211d8087/View/FullText.html?transitionType=Default&contextData=(sc.Default)&VR=3.0&RS=cblt1.0.

[2] *Id.* In 95% of contested Detention Hearings observed by the Clinic, the court did not mention whether the presumption was rebutted or concluded the presumption was not rebutted. *Id.* at 148. When the court found that the presumption had not been rebutted, the defendant was always detained. *Id.*

[3] *Id.* at 161.

[4] *Id.* at 161–62.

underway within the Judiciary to increase release rates during the pretrial phase of federal criminal cases."[5]

The DOJ recently issued a new policy directive aimed at mitigating high detention rates in presumption cases. It instructs that "[p]rosecutors should not seek detention merely because the Bail Reform Act permits such an argument to be made or presumes that detention, based on the charges, is appropriate (as it does for many drug charges, *see* 18 U.S.C. § 3142(e)(3))."[6] The new directive requires prosecutors to do a "case- and defendant-specific" analysis in deciding whether to seek detention in all cases, including presumption cases.[7]

### III.  Pre-Trial Detention is Not Effective in Reasonably Assuring the Safety of the Community.

Congress enacted the statutory presumption of detention in the Bail Reform Act of 1984 (BRA) to detain "a small but identifiable group of particularly dangerous defendants."[8] Indeed, Congress intended the presumptions to operate primarily on "*major* drug traffickers."[9]Congress emphasized that detention should be presumed only for these major drug traffickers, essentially drug kingpins.[10]"Congress considered at length arrestees' pretrial liberty interests, and concluded that the constitutional concerns with pretrial detention required a narrowly tailored statute to

---

[5] United States Courts, *Pretrial Release and Detention in the Federal Judiciary*, https://www.uscourts.gov/services-forms/probation-and-pretrial-services/supervision/pretrial-risk-assessment/pretrial-release#:~:text=The%20Bail%20Reform%20Act%20of,and%20the%20safety%20of%20others.

[6] U.S. Dep't of Just., Just. Manual § 9-6.100 (2023), https://www.justice.gov/jm/jm-9-6000-releaseanddetention-pending-judicial-proceedings.

[7] *Id.* In response to the FCJC study's findings, some federal judges and defense attorneys have also emphasized that federal pretrial detention is under "scrutinized," with Judge Nancy Gertner (ret.) telling USA Today "there should be court watchers all around the country." Tami Abdollah, *Study: Federal Magistrates, Prosecutors Misunderstand Bail Law, Jailing People Who Should Go Free,* USA TODAY (Dec. 7, 2022), https://www.usatoday.com/story/news/politics/2022/12/07/federal-judges-misapply-baillaw-illegally-jail-arrestees-study-says/10798949002/.

[8] S. REP. NO. 98-225, at 6.

[9] S. REP. NO. 98-225, at 20 (emphasis added).

[10] S. REP. NO. 98-225, at 7 (emphasizing that it was only for this "limited group of offenders that the courts [needed the] . . . power to deny release pending trial").

secure community safety and appearance in court."[11]

But the presumption of detention has not worked as intended, and federal pretrial

detention rates have skyrocketed since the BRA was enacted, rising from 19% in 1985 to 75% in

2019.[12] A recent study by the Administrative Office of the Courts (AO) attributed this "massive

increase"[13] in detention rates to the presumption of detention, especially as it is applied to low-

risk defendants.[14] The 2022 FCJC study demonstrated that the detention rate for defendants

facing a presumption of detention is nearly 20 percentage points higher than that for defendants

not facing a presumption, even though today "there is no evidence that people in presumption

cases pose any greater risk than those in non-presumption cases."[15]

The AO study confirms that the presumption increases the detention rate without

advancing community safety. Rather than jailing the worst of the worst, the presumption

overincarcerates the lowest-risk offenders in the system, people who are stable, employed,

educated, and have minimal to no criminal history.[16] When a low-risk individual is not facing a

---

[11] Siegler, *supra* note 1, at 73 (citing S. REP. NO. 98-225, at 8–10).

[12] *Pretrial Release and Detention: The Bail Reform Act of 1984*, BUREAU OF JUST. STAT. SPECIAL REP.,
at 2 (Feb. 1988), https://www.bjs.gov/content/pub/pdf/prd-bra84.pdf (Table 1) (18.8% of defendants detained pretrial in 1985); *Judicial Business: Federal Pretrial Services Tables*, ADMIN. OFF. U.S. COURTS ("AO Table"), Table H-14 (Sept. 30, 2019)
https://www.uscourts.gov/sites/default/files/data_tables/jb_h14_0930.2019.pdf (74.8% of defendants detained pretrial in 2019); *see also* AO Table H-14A (Sept. 30, 2019),
https://www.uscourts.gov/sites/default/files/data_tables/jb_h14a_0930.2019.pdf (61% detention rate *excluding immigration cases*).
12 Amaryllis Austin, *The Presumption for Detention Statute's Relationship to Release Rates*, 81 FED. PROB. 52, 61 (2017) (citing Christopher T. Lowenkamp et al., *Investigating the Impact of Pretrial Detention on Sentencing Outcomes* (The Laura and John Arthur Foundation 2013), archived at https://perma.cc/8RPX-YQ78).

[13] Amaryllis Austin, *The Presumption for Detention Statute's Relationship to Release Rates*, 81 FED. PROB. 52, 61 (2017) (citing Christopher T. Lowenkamp et al., *Investigating the Impact of Pretrial Detention on Sentencing Outcomes* (The Laura and John Arthur Foundation 2013), archived at https://perma.cc/8RPX-YQ78).

[14] *Id.* at 57.

[15] Siegler*, supra* note 1, at 158, 160 & fig.19, 153.

[16] *Id.* at 57.

presumption, they're released 94% of the time.[17] Yet an identically low-risk individual in a presumption case is released just 68% of the time.[18] Recent testimony before Congress relied on this government study to call for reform: "These presumptions must be changed because they've had far-reaching and devastating consequences that were unforeseen and unintended by Congress."[19] Moreover, "[t]he BRA's legislative history demonstrates that Congress did not intend the drug presumption to apply so broadly," and only intended it to apply to "major drug traffickers," not people like Mr. Strauss.[20]

Data proves that pretrial detention does not make our communities safer or ensure appearance in court: "The harmful effects of pretrial detention cannot be justified as permissible consequences of protecting the community, since research shows that pretrial detention—for any amount of time—is correlated with an *increase* in recidivism."[21] The AO cites a famous study that found a relationship "between the pretrial detention of low-risk defendants and an increase in their recidivism rates, both during the pretrial phase as well as in the years following case disposition."[22] More recent studies have confirmed that pretrial detention is criminogenic[23] and

---

[17] *Id.*

[18] *Id.*

[19] *See The Administration of Bail by State and Federal Courts: A Call for Reform*: *Hearing Before the Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. on the Judiciary*, 115th Cong. (2019), https://judiciary.house.gov/calendar/eventsingle.aspx?EventID=2256; *Testimony of Alison Siegler* at PDF 6–7 (Nov. 14, 2019), https://docs.house.gov/meetings/JU/JU08/20191114/110194/HHRG-116-JU08-TTF-SieglerA-20191114.pdf;

[20] Erica Zunkel & Alison Siegler, *The Federal Judiciary's Role in Drug Law Reform in an Era of Congressional Dysfunction*, 18 OHIO ST. J. CRIM. L. 283, 292 (2020) (analyzing legislative history of presumptions in detail).

[21] Siegler, *supra* note 1, at 62 & n.102.

[22] Austin, *supra* note 13, at 54.

[23] Paul Heaton et al., *The Downstream Consequences of Misdemeanor Pretrial Detention*, 69 STAN. L. REV. 711, 718 (2017), archived at https://perma.cc/5723-23AS ("[D]etention is associated with a 30% increase in new felony charges and a 20% increase in new misdemeanor charges, a finding consistent with other research suggesting that even short-term detention has criminogenic effects."); Arpit Gupta et al., *The Heavy Costs of High Bail: Evidence from Judge Randomization*, 45 J. LEGAL STUD. 471, 496 (2016) ("[O]ur results suggest that the assessment of money bail yields substantial negative externalities in terms of additional crime.").

cautioned that "lower crime rates should not be tallied as a benefit of pretrial detention."[24] One reason why pretrial detention is criminogenic is because jails' physical and mental health screenings and treatment offerings are often inadequate.[25] In addition, federal "pretrial detention is itself associated with increased likelihood of a prison sentence and with increased sentence length," even after controlling for criminal history, offense severity, and socio-economic variables.[26]

Again, this is not just an issue recognized or argued by the Defense bar, but a well-documented issue recognized by the Federal Judiciary. As cited on the U.S. Courts website, "Social science research shows that people held in jail pretrial are more likely to be convicted, sentenced to longer incarceration terms, or to commit new crimes post-trial compared to their released counterparts. The relative cost of pretrial detention – about $92 per day – is also significantly higher than the cost of pretrial supervision – about $11 a day. Defendants released in the federal system have a high degree of success, with 86 percent committing no new violations or failing to appear in court as required."[27]

99% of federal defendants are not rearrested for a violent crime while on pretrial release.[28] In other words, pretrial detention imposes enormous costs on criminal defendants, their loved ones, and the community, in a counterproductive attempt to prevent crimes that are

---

[24] Emily Leslie & Nolan G. Pope, *The Unintended Impact of Pretrial Detention on Case Outcomes: Evidence from New York City Arraignments*, 60 J.L. & ECON. 529, 555 (2017).

[25] *See* Laura M. Maruschak et al., *Medical Problems of State and Federal Prisoners and Jail Inmates*, BUREAU OF JUST. STAT., at 9 (2015), archived at https://perma.cc/HGT9-7WLL (comparing healthcare in

prisons and jails); *see also* Faye S. Taxman et al., *Drug Treatment Services for Adult Offenders: The State of the State*, 32 J. SUBSTANCE ABUSE TREATMENT 239, 247, 249 (2007), archived at https://perma.cc/G55Z-4KQH.

[26] James C. Oleson et al., *The Sentencing Consequences of Federal Pretrial Supervision*, 63 CRIME & DELINQUENCY 313, 325 (2014), archived at https://perma.cc/QAW9-PYYV.

[27] United States Courts, *supra* note 5.

[28] Thomas H. Cohen et al., *Revalidating the Federal Pretrial Risk Assessment Instrument: A Research Summary*, 82(2) FED. PROB. 23, 26 (2018), archived at https://perma.cc/8VM9-JH9T

extremely unlikely to happen in the first place. Conversely, releasing more people prior to trial does not correlate with increased rates of failure to appear or rearrest for new crimes.[29] In fact, the rates at which people on federal pretrial release either fail to appear in court or are rearrested for a new crime are extraordinarily low, "with both sitting at approximately 1–2%."[30]"Strikingly, rates of nonappearance and rearrest are just as low in the federal courts with the *highest* pretrial release rates as they are in the districts with the *lowest* release rates."[31]

## IV.  Case Law Emphasizes Two Checks That the BRA and the Constitution Impose on the Presumption of Detention.

Case law has established two checks that the BRA and the Constitution impose on the presumption: (1) there is an easy-to-meet standard for rebutting the presumption and the prosecution bears the burden of persuasion, and (2) the presumption alone does not warrant detention and must always be weighed along with other factors in § 3142(g).[32] In addition, it is impermissible to detain a defendant in a presumption case based solely on evidence of past dangerousness, the nature of the crime charged, or the weight of the evidence.

### A.  Step 1: The Presumption is Easily Rebutted.

Under the law, very little is required for a defendant to rebut the presumption of detention and therefore judges should find the presumption rebutted in most cases. To rebut the presumption, a defendant simply needs to produce "some evidence that he will not flee or endanger the community if released." *Dominguez*, 783 F.2d at 707; *see also United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985), *abrogated on other grounds by United States v. O'Brien*, 895 F.2d 810 (1st Cir. 1990) ("[T]o rebut the presumption, the defendant must produce

---

[29] Siegler, *supra* note 1, at 24.
[30] *Id.*
[31] *Id.* at 25 fig.4.
[32] *Id.* at 151.

some evidence."); *United States v. Gamble*, No. 20-3009, 2020 U.S. App. LEXIS 11558 at *1–2
(D.C. Cir. Apr. 10, 2020) (holding that "[t]he district court erred in concluding that appellant
failed to meet his burden of production to rebut the statutory presumption" regarding
dangerousness because "appellant did 'offer some credible evidence contrary to the statutory
presumption,'" including information that he had a job offer) (unpublished) (quoting *United
States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985)).

This "burden of production is not a heavy one to meet." *Dominguez*, 783 F.2d at 707; *see
also United States v. Wilks*, 15 F.4th 842, 846–47 (7th Cir. 2021) (explaining that the defense
bears "a light burden of production" to rebut the presumption, "but the burden of persuasion
always rests with the government"). Indeed, the presumption of detention is rebutted by "*[a]ny
evidence* favorable to a defendant that comes within a category listed in § 3142(g) . . . including
evidence of their marital, family and employment status, ties to and role in the community . . .
and other types of evidence encompassed in § 3142(g)(3)." *Dominguez*, 783 F.2d at 707
(emphasis added); *Jessup*, 757 F.2d at 384. Any "evidence of economic and social stability" can
rebut the presumption. *Dominguez*, 783 F.2d at 707.

Notably, a defendant's ties to the community—standing alone—definitively rebut the
presumption: "Where the defendant has presented considerable evidence of his longstanding ties
to the locality in which he faces trial, as did [this defendant], the presumption contained in §
3142(e) has been rebutted." *United States v. Jackson*, 845 F.2d 1262, 1266 (5th Cir. 1988). As
long as a defendant "come[s] forward with some evidence" pursuant to § 3142(g), the
presumption of flight risk and dangerousness is definitively rebutted. *Dominguez*, 783 F.2d at
707 ("Any evidence favorable to a defendant that comes within a category listed in § 3142(g) can
affect the operation of one or both of the presumptions. . . . Once this burden of production is

met, the presumption is 'rebutted.'" (quoting *Jessup*, 757 F.2d at 384)); *see also O'Brien*, 895 F.2d at 816 (finding presumption of flight risk rebutted by evidence of effectiveness of electronic monitoring ankle bracelet together with posting of defendant's home).[33] Importantly, the government bears the burden of *persuasion* at all times. *Dominguez*, 783 U.S. at 707; *Jessup*, 757 F.2d at 384; *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985).

In *Dominguez*, for example, the Seventh Circuit determined that the defendants had sufficiently rebutted the presumption of detention by introducing fairly minimal evidence about their employment and family ties. 783 F.2d at 707. Both defendants were Cuban immigrants who were not U.S. citizens but had been in the country lawfully for five years, and neither had a criminal record. *Id.* One of the defendants was married and had family members in the United States; both were employed. *Id.* These facts alone were sufficient for the Seventh Circuit to find that defendants had rebutted the presumption. *Id.*

**B. Step 2: The Presumption Alone is Not Sufficient to Warrant Detention, and Must Be Weighed Along with the § 3142(g) Factors.**

After the presumption is rebutted, the Court must weigh the presumption against all of the other evidence about the defendant's history and characteristics that tilts the scale in favor of release. *See Dominguez*, 783 F.2d at 707 ("[T]he rebutted presumption is not erased. Instead, it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."); *Jessup*, 757 F.2d at 384 (holding that the judge should consider the rebutted presumption along with the § 3142(g) factors). The Court

---

[33] To rebut the presumption of flight risk, for example, a defendant does not "have to *prove* that he would not flee—*i.e.*, he would [not] have to *persuade* the judicial officer on the point. [Instead], he would only have to introduce a certain amount of evidence contrary to the presumed fact." *Jessup*, 757 F.2d at 380–81; *accord Dominguez*, 783 F.2d at 707.

should not give the presumption undue weight if evidence relating to other § 3142(g) factors supports release.

### C. Forbidden Considerations in a Presumption Case

A judge may not detain a defendant in a presumption case based ***solely*** on (1) an unrebutted presumption alone, (2) evidence of the defendant's past dangerousness, or (3) the nature and seriousness of the crime charged, or (4) the weight of the evidence of the person's guilt.

First, the defendant never bears the burden of persuasion—even if the presumption is unrebutted. It is not incumbent on the defendant to "persuade the judge that there exist conditions of release that will reasonably assure the safety of the community."[34] That burden of persuasion lies with the government, the standard of which is always clear and convincing evidence. *Wilks*, 15 F.4th at 846–47 ("[T]he burden of persuasion always rests with the government and an unrebutted presumption is not, by itself, an adequate reason to order detention.").

Second, even if the presumption is not rebutted, a judge is prohibited from detaining a defendant "based on evidence that he has been a danger in the past[.]" *Dominguez*, 783 F.2d at 707. Instead, past dangerous conduct is relevant only to the extent that the government can prove—by clear and convincing evidence—that the defendant is "likely to continue to engage in criminal conduct undeterred [ ] by . . . release conditions." *Id.* Even when a defendant is charged with a serious crime or has a significant criminal history, there may be release conditions that will reasonably assure the safety of the community. Of course, in the present case at bar, Mr. Strauss has about as limited a criminal history as one can have. He has a dismissed case from several years ago, and several unresolved charges stemming from the same incident in February

---

[34] Siegler*, supra* note 1, at 156.

of this year – an incident allegedly against his father, who wants his son back home and does not want to see criminal charges result from the incident.

Third, to rebut the presumption of dangerousness, a defendant need not "demonstrate that narcotics trafficking [or another serious crime] is not dangerous to the community." *Id.* at 706. Instead, this Court must analyze the defendant's individual characteristics under § 3142(g). If Mr. Strauss is proven guilty, no one can argue that the charged crime is not dangerous to the community. However, that is not the burden the Defense must meet in order to rebut the presumption.

Fourth, the Court is forbidden from relying solely on the weight of the evidence of guilt to detain a defendant in a presumption case. A defendant is not required to "'rebut' the government's showing of probable cause to believe that he is guilty of the crimes charged." *Id.* This makes sense—a person's likelihood of guilt is analytically distinct from whether there are conditions of release that will reasonably assure the person's appearance or the safety of the community. And certainly, this factor cannot hold too much weight in the Court's decision-making or else it would deny Mr. Strauss and other defendant's their presumption of innocence.

## V. The Presumption of Detention Is Rebutted in This Case.

As detailed below, there is more than "some evidence that Mr. Strauss will not flee or endanger the community if released." *Dominguez*, 783 F.2d at 707. It is imperative that this Court follow the letter of the law by giving the presumption of detention "the low weight to which it is assigned by case law."[35] The defense has therefore rebutted the presumption in this case. The defense has (and will) therefore rebutted the presumption in this case. The defense

---

[35] Siegler, *supra* note 1, at 146.

intends to provide live witness testimony at the detention hearing on April 10, 2024, which will supplement the evidence.

**Family Ties.** As detailed in ECF No. 9, Mr. Strauss lives with his other, Jennifer Strauss, his father, Jeremy Strauss, his girlfriend, Faith Johnson, and his grandmother, Judith Eichhorn. He has lived with his parents since he was adopted as a baby, and has lived in Moneta, Virginia, since the adoption. He is incredibly close to his parents and due to his mental health conditions, they still have legal guardianship over him. He is reliant on his parents for all aspects of his life. He is also close with his grandmother, and was very close to his grandfather, John Eichhorn III before he passed away in October 2020.[36] Mr. Strauss has dated Ms. Johnson on and off for the past six years.

**Ties to the Community**. Mr. Strauss has no ties to any other community. He was born out of state but was adopted by the Strauss family when he was an infant. He graduated from Halifax County High School in South Boston, Virginia. His only ties are to this district. He does not work, due to his disabilities, but he receives a monthly disability check, which comes to his home listed in ECF No. 9. He also attends monthly sessions with a psychologist in the area. Mr. Strauss does not have his own car nor a driver's license and depends on his family to travel around the community.

**Limited Criminal History**. Despite pretrial's report that Mr. Strauss's "criminal history" creates a risk of nonappearance (and locked hand in hand his "violent behavior history"), Mr. Strauss has a negligible criminal history, if it can even be categorized as such. For an incident in 2020 involving his father, the case was dismissed. Not nolle prossed, not plead out, but dismissed. If it is necessary to ever calculate his guidelines, this incident would not count because it is not

---

[36] https://www.tributearchive.com/obituaries/18626856/John-Edward-Eichorn-III.

considered by the U.S. Sentencing Commission as a countable offense. Everything else listed in such a "history" stemmed from an alleged altercation on the same day between he and his father and occurred because Mr. Strauss did not take the medication he needed, but since February has been on. His family is not concerned about any "violence," and never wanted Mr. Strauss arrested nor convicted for a minor incident that was ultimately resolved among family. Most importantly, the disposition of such charges is yet to be resolved and could ultimately result in more dismissals. Mr. Strauss has a very minor history and is not a violent person.

**No History of Nonappearance**. Due to Mr. Strauss's almost nonexistent criminal history, he also has no history of nonappearance. Unlike many before this Court who have been released even with Contempt of Courts or FTAs on their record, Mr. Strauss has none of this. He has never been on probation so he has no history of probation violations.

**No History of Drug or Alcohol Abuse**. Mr. Strauss has never been to treatment for alcohol dependence or substance abuse, and there is no indication he is in need of such treatment. However, pretrial shockingly still listed "substance abuse history" as an indicator of nonappearance and that he is a danger to society. This is nonsensical. It appears this is considered a factor because Mr. Strauss, in an effort to be honest with pretrial, admitted to daily use of marijuana. Like many of his generation, he uses a vape pen. This is legal in Virginia. Substance abuse is not mere substance use – countless people throughout the country legally drink alcohol, but until their use effects their daily lives or they are dependent on it, it is not considered abuse. Nor should the mere use of marijuana. Mr. Strauss understands that while on pretrial, he cannot use marijuana, and is willing to accept a condition as such.

The foregoing facts definitively rebut the presumption of detention in this case.

**VI.  Regardless of the Presumption, Mr. Strauss Must be Release Because There are Conditions That Will Reasonable Assure Appearance and Safety.**

14

Regardless of whether this Court finds that the presumption of detention is rebutted, Mr. Strauss must be released because there are conditions that will reasonably assure the safety of the community and Mr. Strauss's appearance in court. The presumption of detention, on its own, is insufficient to justify detention. *Wilks*, 15 F.4th at 847 ("[A]n unrebutted presumption is not, by itself, an adequate reason to order detention."); *Jackson*, 845 F.2d at 1266 (concluding that if the presumption alone could justify detention, "there would be no need for Congress to have specified 'the weight of the evidence against the person' as a separate factor for the court to consider"). The BRA requires courts to weigh all the § 3142(g) factors in every case, even when the presumption has not been rebutted. *Wilks*, 15 F.4th at 847.[37]

There is no doubt, and the Government will assuredly argue, that the circumstances of this case and the facts alleged are serious. Government will likely argue that the weight against Mr. Strauss is heavy (as in most Detention Hearing cases, Defense has not seen the full discovery through no fault of the Government[38], and would likely be able to combat the weight more so if it had seen all evidence). However, the seriousness of the case and the weight of the evidence alone cannot be what prevents the Court from finding that there are conditions that would reasonably assure appearance and safety. Otherwise, the BRA would provide not just a presumption, but a strict "if Charge X then NO release" type of liability for certain crimes. That is not the BRA standard. Similarly, Mr. Strauss is currently presumed innocent and cannot be

---

[37] S. REP. NO. 98-225, at 23, *as reprinted in* 1984 U.S.C.C.A.N. at 3206 ("Subsection (g) enumerates factors that are to be considered by the judicial officer in determining whether there are conditions of release that will reasonably assure the appearance of the person and the safety of any other person and the community. Since this determination is made *whenever a person is to be released or detained under this chapter, consideration of these factors is required* . . . a court is expected to weigh all the factors in the case before making its decision as to risk of flight and danger to the community." (emphasis added)).

[38] And in fact, Mr. Jason Scheff, the AUSA on the case, is providing some evidence to Defense tomorrow on the date of the hearing – although not the full case file for logistical purposes.

locked up based only on the Government's argument of a strong case. These are merely two factors among many, not to be balanced on one side against all of the other factors on the other, but all viewed as a totality of circumstances.

A defendant cannot be detained "unless a finding is made that no release conditions '*will* reasonably assure . . . the safety of the community'" and the defendant's appearance in court. *Dominguez*, 783 F.2d at 707 (quoting § 3142(e)). Here, the government will not be able to carry its high burden of proving by clear and convincing evidence that there are *no* release conditions that will reasonably assure the safety of the community. *See id.* at 708 n.8. Nor will the Government be able to prove by a preponderance of the evidence that there are no conditions of release that would reasonable assure Mr. Strauss's appearance in Court. Thus, Mr. Strauss cannot be detained.

The following conditions of release under § 3142(c)(1)(B), and any other conditions the Court deems necessary, will reasonably assure Mr. Strauss's appearance in court and the safety of the community:

- Place Mr. Strauss in the custody of his parents as third-party custodians "who agree to assume supervision and to report any violation of a release condition to the Court." § [3142(c)(1)(B)(i)]. Mr. Strauss already lives with his parents, and they have legal guardianship over him. They are used to caring for him, ensuring he takes his medication, and driving him around. They are willing and able to provide the same support for him regarding the Court's conditions. Additionally, his father works from home and his grandmother lives at home, so Mr. Strauss would never be home alone.
- Report on a "regular basis" to PTS or some other agency [(vi)]
- Avoid "all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense" including any usernames or social media associated with such person. [(v)]
- Refrain from any use of an internet-connected Smart phone, any computer, or any internet-connected device such as an X-box. The use of a phone to call 911 in an emergency is allowed.
- No contact with any minors, that is anyone under the age of 18.
- Refrain from "any use of a narcotic drug or other controlled substance . . . without a prescription" [(ix)]

16

- Undergo "medical, psychological, or psychiatric treatment." Specifically, treatment for social media addiction. [(x)]

While Defense Counsel believes electronic monitoring or home detention is unnecessary given the option of Third-Party custodians, Mr. Strauss is willing to comply with such if deemed necessary by the Court.

Because there are conditions of release that will reasonably assure Mr. Strauss's appearance in court and the safety of the community, he must be released.

## VII.  Statistics Showing That it is Extraordinarily Rare for Defendants on Bond to Flee or Recidivate Further Demonstrate that the Foregoing Conditions of Release Will Reasonable Assure Appearance and Safety.

It is not necessary to detain Mr. Strauss to meet the primary goals of the BRA, which are to "reasonably assure" appearance in court and community safety. § 3142(e). In this case, this Court should be guided by AO statistics showing that nearly everyone released pending trial in the federal system appears in court and does not reoffend. In fact, in 2021, 99% of released federal defendants nationwide appeared for court as required and 99% were not arrested for new crimes on bond.[39] Significantly, this near-perfect compliance rate is seen equally in federal districts with very high release rates and those with very low release rates.[40] Even in districts that release two-thirds of all federal defendants on bond, just 1% fail to appear in court and 1% are

---

[39] App. 1, AO Table H-15 (Sept. 30, 2022). These high compliance rates have remained remarkably consistent over time, both before and after the pandemic. *See, e.g.*, Mot. for Bond, *United States v. Rodriguez*, No. 19-CR-77 (E.D. Wis. Apr. 2, 2020), ECF No. 41, Ex. 1, archived at https://perma.cc/LYG4-AX4H (showing a nationwide appearance rate of 99% and non-rearrest rate of 98%).

[40] The data showing near-perfect compliance on bond is illustrated in the figure below. Siegler, *supra* note 1, at 25 fig.4. The districts with the highest and lowest release rates were identified using the version of AO Table H-14A for the 12-month period ending September 30, 2021. *See* App. 2, AO Table H-14A (Sept. 30, 2021), https://perma.cc/CYV5-3TZ6. The failure-to-appear and rearrest rates for these districts were calculated using App. 1, AO Table H-15. With regard to flight, the ten federal districts with the lowest release rates (average 20.00%) have an average failure-to-appear rate of 1.6%, while the ten districts with the highest release rates (average 64%) have an *even lower* failure-to-appear rate of 1.1%. With regard to recidivism, the ten districts with the lowest release rates have an average rearrest rate on bond of 0.8%, while the ten districts with the highest release rates have an average rearrest rate of 1.1%.

rearrested while released.[41] The below chart reflects shows the same vanishingly low failure to appear and rearrest rates based on AO data spanning 2007 to 2021.[42]



**Figure 4:** Even When Release Rates Increase, Arrestees Almost Never Flee or Recidivate.

---

[41] *Id.*

[42] *See* Siegler, *supra* note 1, at 25 fig.4.

In addition, as the federal Probation and Pretrial Services Office recently highlighted, release rates rose slightly during the pandemic but failure-to-appear and rearrest rates did not increase.[43] Release rates increased from 25% in 2019 to 36% in 2021 but "the rates at which people on pretrial release failed to appear in court or were rearrested remained extremely low."[44]

The bond statistics for this district likewise strongly suggest that Mr. Strauss should be released. In this district, released federal defendants failed to appear for court less than 1% (.98) of the time in 2021, and only 2.9% of defendants were rearrested on release.[45] Yet despite the statistically low risk of flight and recidivism that defendants like Mr. Strauss pose, the government recommends detention in 71% of cases nationwide. Clearly the government's detention requests are not tailored to the low risk of flight and recidivism that defendants in this district and elsewhere pose.

Mr. Strauss must be released because the Government cannot establish that he would be among the small percentage of defendants who fail to appear in court or are rearrested on bond. And they will certainly be unable to show by clear and convincing evidence that no conditions of release will satisfy the BRA's least restrictive means edict. Detaining Mr. Strauss without such evidence violates his constitutionally protected liberty interest.

## VIII.  Conclusion

For these reasons, Mr. Strauss respectfully requests that this Court find that the presumption has been rebutted and release him with conditions.

Respectfully Submitted,

---

[43] *Id.* at 246 n.42.
[44] *Id.*
[45] *See* App. 1, AO Table H-15.

Evan Strauss
By Counsel

Beatrice F. Diehl, Esq.

FL  Bar No.: 0124667
Assistant Federal Public Defender
Office of the Federal Public Defender
Western District of Virginia
Roanoke, VA, 24011
Ph. (540) 777-0891
Beatrice_diehl@fd.org

**CERTIFICATE OF SERVICE**

I certify that a true copy of the foregoing was electronically filed and will be forwarded to the Assistant United States Attorney, this 9th day of April, 2024.